IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2005 FEB 11 PM 2:03

| | |
|---|---|
| FIELDTURF INTERNATIONAL, INC., a Florida corporation; and FIELDTURF, INC., a Canadian company, <br><br> Plaintiffs, <br><br> v. <br><br> HELLAS CONSTRUCTION INC., a Texas company; <br><br> Defendant. | CIVIL ACTION NO.: <br><br> **A05CA 090 SS** <br><br><br><br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiffs, FieldTurf International, Inc. and FieldTurf, Inc. (collectively "Plaintiffs"), in their complaint against Defendant Hellas Construction Inc. ("Defendant"), allege as follows:

### THE PARTIES

1. FieldTurf International, Inc. is a Florida corporation, with its principal place of business in Dalton, Georgia. FieldTurf International, Inc. manufactures, sells and installs synthetic turf products throughout the United States.

2. FieldTurf, Inc. is a Canadian company with its principal place of business in Montreal, Quebec, Canada. FieldTurf, Inc. designs synthetic turf products and distributes these products worldwide.

3. Plaintiffs use the trademark FIELDTURF in Commerce to promote, advertise and as a source identifier for the goods and services associated with the manufacture, sale and installation of synthetic turf products. Plaintiffs are owners of common-law rights in the

trademark FIELDTURF, and FieldTurf, Inc. is the owner of U.S. Trademark Registration No. 2,593,572, issued by the United States Patent and Trademark Office on July 16, 2002, for the FIELDTURF trademark. FieldTurf International, Inc. is a licensee of the registered FIELDTURF trademark. (Plaintiffs' rights in the registered mark in Exhibit A and in the common-law rights to the trademark FIELDTURF will sometimes hereinafter be referred to as the "Trademark" or the "FIELDTURF Trademark").

4. Both FieldTurf Inc. and FieldTurf International, Inc. use the FIELDTURF Trademark in connection with their synthetic athletic surfacing products and services. Plaintiffs have a well-known and excellent reputation in the synthetic turf industry for high quality products. Plaintiffs' goodwill and reputation are embodied in the FIELDTURF Trademark.

5. Defendant Hellas Construction Inc. is a Texas corporation, having a principal place of business at 12710 Research Blvd., Suite 240, Austin, Travis County, Texas 78759. On information and belief, Defendant operates as a sports facility contractor providing a wide variety of turf, track and tennis products and offering installation services to these facilities. On information and belief, Defendant solicits sport facilities through its Internet based website, www.swtennis.com and/or www.hellasconstruction.com. Copies of printouts of these websites are attached hereto as Exhibit B.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is proper in this Court inasmuch as this action asserts the violation of a federally registered trademark, including a claim under 15 U.S.C. § 1116 and §1117. Therefore this Court has jurisdiction over that claim, and related unfair competition claims pursuant to the provisions of 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338(a) and 1338(b). All other claims in this action arise from the same transaction or occurrence, such that

this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a). Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, inasmuch as Plaintiffs and Defendant are residents of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. This Court may exercise personal jurisdiction over Defendant because Defendant is incorporated in Texas and has a principal place of business in Texas.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), since, *inter alia*, Defendant has its principal place of business within this district and is subject to personal jurisdiction here.

## THE FIELDTURF MARK

9. Plaintiffs have used the FIELDTURF Trademark since at least 1994 in Canada and in the United States in connection with synthetic surfacing, which consists of ribbons of synthetic fibers woven on a backing and partially covered by a particulate infill for the playing of soccer, football, lacrosse, field hockey, golf, and other activities.

10. Over their years of use of the FIELDTURF Trademark, Plaintiffs have become well known in the sports surfacing industry for their artificial sports surfacing bearing the FIELDTURF Trademark.

11. Over the many years that Plaintiffs have used the FIELDTURF Trademark, they have promoted and sold hundreds of millions of dollars worth of goods and services under the FIELDTURF Trademark designation.

12. In support of the promotion and sales of Plaintiffs' products, Plaintiffs' products marketed under the FIELDTURF Trademark have been extensively advertised throughout the United States and foreign countries.

3

13. As a result of Plaintiffs' advertising, promotion and sales, and as a result of the superior product associated with the FIELDTURF Trademark, the mark has come to mean and is understood to mean the Plaintiffs and Plaintiffs' products only, and the word FIELDTURF is a mark by which the goods of Plaintiffs are distinguished from other goods of the same class. This is true throughout the United States, including the State of Texas, and the City of Austin.

14. The commercial success of Plaintiffs' products in major sporting venues has made the FIELDTURF Trademark immediately recognizable as a signifier of Plaintiffs' goods, and the quality and characteristics of those goods. Plaintiffs' products have been installed in such famous sporting venues as Qwest Field (home of the Seattle Seahawks), Hubert H. Humphrey Metrodome (home of the Minnesota Vikings and Twins), Paul Brown Stadium (home of the Cincinnati Bengals), Michigan Stadium (home of the Michigan Wolverines), Camp Randall Stadium (home of the Wisconsin Badgers), and others.

15. Due to Plaintiffs' extensive advertising and promotion of the goods associated with the FIELDTURF Trademark throughout the United States, along with the extensive, exclusive and continuous use of the FIELDTURF Trademark by Plaintiffs, and strong commercial success of Plaintiffs' products, the FIELDTURF Trademark has for many years been, and continues to be, a famous mark within the relevant market.

### DEFENDANT'S PAST COMPETITION WITH FIELDTURF

16. Throughout their long history, Plaintiffs have had a number of competitors within the industry.

17. One particularly fierce competitor was Southwest Recreational Industries, Inc., (hereinafter "SRI") which did business and sold artificial turf fields under the name "Astroturf"

4

and "Astroplay." SRI was the primary artificial turf installation company throughout the United States prior to the emergence of Plaintiffs.

18. On information and belief, the Chief Executive Officer of SRI was a man by the name of Reed Seaton. On information and belief, Mr. Seaton now holds a similar position with Defendant.

19. During Mr. Seaton's tenure as CEO of SRI, the company was accused on multiple occasions of infringing one or more patents of Plaintiffs. At least one of these accusations resulted in the commencement of litigation, and eventual settlement between the parties. As such, Mr. Seaton was well acquainted with both Plaintiffs' products, and the FIELDTURF Trademark.

20. On information and belief, due in part to the commercial success of Plaintiffs' products, SRI filed for bankruptcy protection in February of 2004 and is no longer operating.

## DEFENDANT'S INFRINGING ACTS

21. Defendant has now attempted to capitalize on the goodwill associated with the FIELDTURF Trademark by using that mark in association with goods and/or services, without the permission, and in direct violation of the rights of Plaintiffs.

22. On information and belief, after the bankruptcy of SRI, at least Mr. Seaton formed Hellas Construction Inc. to compete with Plaintiffs in the artificial turf market, by offering a wide variety of artificial turf, track and tennis products and installation services to sport facilities.

23. To help advertise, promote and solicit product sales and installation services to sport facilities, Defendant uses Internet based websites, www.swtennis.com and/or www.hellasconstruction.com.

24. Defendant's website represents to the public that "Hellas Construction is the *field turf* specialty contractor!" and "Hellas Construction is the *field turf*, track, tennis and specialty contractor!" (Emphasis added) (See Exhibit B).

25. Defendant's use of the term "*field turf*" is confusingly similar to Plaintiffs' FIELDTURF Trademark with the only difference being that the term "*field turf*" is separated into two words by a space in between "*field*" and "*turf.*"

26. In making such representations on its websites, Defendant used, is using, and intends to continue using the term "*field turf*" with the intent to confuse and deceive consumers in Texas and elsewhere into believing that such consumers are dealing with someone that is affiliated with, associated with, or sponsored by Plaintiffs, or that sells an artificial turf product made and sold by Plaintiffs.

27. Defendant's representations are not true by virtue of the fact that Defendant is not associated with, sponsored by, or affiliated with Plaintiffs.

28. Defendant's use of the term "*field turf*" is intended to simulate, imitate or confuse or dilute the FIELDTURF Trademark, and is done so, through at least Mr. Seaton, with full knowledge of and in willful disregard of Plaintiffs' rights in the FIELDTURF Trademark.

29. On information and belief, existing and potential customers of Plaintiffs in Texas and nationwide have visited and will continue to visit Defendant's websites believing them to be affiliated with, associated with, or sponsored by Plaintiffs.

30. On information and belief, Defendant knew or should have known that these instances of confusion were and are likely to happen and that injuries to Plaintiffs would likely result thereof in Texas and nationwide. On information and belief, Defendant's conduct was intended to and did result in harmful effects in Texas and nationwide.

6

31. On information and belief, Defendant's adoption and use of Plaintiffs' FIELDTURF Trademark was willful and deliberate with the intent to cause public confusion and for the purpose of leading persons and prospective customers to believe that Defendant is in some way associated with, sponsored by, or affiliated with Plaintiffs.

32. On information and belief, Defendant's unauthorized use of the term "*field turf*" in its Internet based websites, www.swtennis.com and/or www.hellasconstruction.com, was willful and deliberate with the intent to dilute Plaintiffs' Trademark FIELDTURF.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER LANHAM ACT

33. Plaintiffs repeat and incorporate by reference the allegations and facts set forth in paragraphs 1 through 32 above as if fully set forth herein.

34. FieldTurf, Inc. exclusively owns the registered trademark FIELDTURF (U.S. Registration No. 2,593,572). (See Exhibit A).

35. Since at least as early as March 21, 1994, Plaintiffs have used their FIELDTURF Trademark in interstate commerce in connection with their synthetic athletic surface products.

36. Plaintiffs have invested considerable time and money in developing goodwill and reputation associated with their Trademark, the products bearing their Trademark, and their association with Plaintiffs.

37. Without the consent of Plaintiffs, Defendant has used Plaintiffs' Trademark in connection with its advertisement and promotion in such a way as to actually and/or likely cause confusion, cause mistake, or to deceive.

38. By use of Plaintiffs' Trademark, Defendant is misleading the public in general, and consumers and users of synthetic athletic fields into believing that Defendant offers and installs Plaintiffs' products, and that Defendant's services are sponsored by, affiliated, licensed,

or associated with Plaintiffs, thereby depriving Plaintiffs of the benefit of the goodwill associated with their Trademark and products bearing their Trademark, and unlawfully usurping that goodwill for Defendant's own benefit.

39. Defendant's use of Plaintiffs' Trademark constitutes infringement of FieldTurf's Trademarks and related rights under the Trademark Act and the U.S. trademark laws pursuant to 15 U.S.C. § 1051 et seq., and particularly 15 U.S.C. § 1114(1) (Lanham Act, § 32(1)).

40. Plaintiffs are entitled to a full range of relief under the provisions of the Trademark Act and the U.S. laws relating to trademarks and unfair competition, including relief pursuant to at least 15 U.S.C. §§ 1116, 1117, 1118.

## COUNT II
### FALSE DESIGNATION OF ORIGIN, FALSE/MISLEADING DESCRIPTION AND FALSE REPRESENTATION OF FACT UNDER §43(a) OF LANHAM ACT

41. Plaintiffs repeat and incorporate by reference the allegations and facts set forth in paragraphs 1 through 40 above as if fully set forth herein.

42. Plaintiffs' Trademark identifies Plaintiffs as an exclusive source, and distinguishes Plaintiffs' synthetic athletic surface products in the marketplace.

43. Defendant's unauthorized use of Plaintiffs' Trademark in connection with advertisement and solicitation of its services is likely to have caused and/or actually has caused confusion and or mistake as to the origin of Defendant's goods, or as to the affiliation or sponsorship of the goods and/or services of Defendant by Plaintiffs.

44. Defendant's unauthorized use of Plaintiffs' Trademark in connection with advertisement and solicitation of its services, including use of Plaintiffs' Trademark in advertising and promoting its products and/or services, has resulted in a false description and

misrepresentation of the nature, characteristics, quality and origin of Defendant's synthetic turf fields, which are not FieldTurf products.

45.     Defendant's unauthorized use, advertisement, promotion and display of Plaintiffs' Trademark constitutes false designation of origin, false and misleading description and false representation of fact under §43(a) of the Lanham Act.

46.     Defendant's unauthorized use, advertisement, promotion and display of the FIELDTURF Trademark has caused, and may continue to cause damages and irreparable injury to Plaintiffs' reputation, good will, business, and economic opportunities.

47.     Plaintiffs are entitled to relief under the provisions of the Trademark Act and the U.S. laws relating to trademarks and unfair competition pursuant to at least 15 U.S.C. §§ 1116, 1117, 1118.

## COUNT III
## DILUTION OF A FAMOUS MARK UNDER THE LANHAM ACT

48.     Plaintiffs repeat and incorporate by reference the allegations and facts set forth in paragraphs 1 through 47 above as if fully set forth herein.

49.     As a result of Plaintiffs' extensive and exclusive use and advertising of the FIELDTURF Trademark, that mark has become and continues to be a famous and distinctive trademark within the synthetic turf industry.

50.     Defendant's unauthorized use of the FIELDTURF Trademark, as outlined above, constitutes an attempt to dilute the strength and distinctiveness of the FIELDTURF Trademark through tarnishment and/or blurring.

51.     Such unauthorized use was done and is being done with full knowledge of Plaintiffs' rights in the FIELDTURF Trademark, and with willful disregard of those rights.

52. As such, Defendant's actions constitute a violation of at least 15 U.S.C. § 1125(c), as the dilution of Plaintiffs' famous FIELDTURF Trademark.

53. Plaintiffs are entitled to relief for the attempted and/or actual dilution of the FIELDTURF Trademark under at least 15 U.S.C. §§ 1116, 1117, 1118.

54. Notwithstanding these damages provisions, Plaintiffs have no plain, speedy, complete or adequate remedy at law and will continue to suffer great and irreparable injury to their trademark rights and property rights for which they cannot be fully compensated in damages unless the Court enjoins Defendant from further unauthorized usage of the FIELDTURF Trademark.

## COUNT IV
## UNFAIR COMPETITION
## UNDER TEXAS COMMON LAW

55. Plaintiffs repeat and incorporate by reference the allegations and facts set forth in paragraphs 1 through 54 above as if fully set forth herein.

56. Plaintiffs own rights in the FIELDTURF Trademark in connection with their synthetic athletic surface products and services.

57. Defendant's use of the name "*field turf*" in connection with its services has caused actual and/or a likelihood of consumer confusion or misunderstanding as to the source, sponsorship, approval, or certification of its services and the turf products used in connection with its services.

58. Defendant's use of the name "*field turf*" in connection with its services has caused actual and/or a likelihood of consumer confusion or misunderstanding as to affiliation, connection or association with or certification by Plaintiffs of Defendant's services and the turf products used in connection with its services.

AUSTIN. 980000.30000· 312165v1

59. By marketing, advertising, promoting and selling its services by use of Plaintiffs' Trademark, Defendant has misappropriated and relied upon the good will associated with and symbolized by Plaintiffs' Trademark.

60. Defendant's above-described conduct constitutes unfair competition under the common law of the State of Texas.

61. Defendant's unauthorized use and misrepresentations associated with its unauthorized use of Plaintiffs' Trademark have unjustly enriched Defendant at Plaintiffs' expense.

62. Defendant's unauthorized use and misrepresentation associated with its unauthorized use of Plaintiffs' Trademark has injured, and may continue to injure, Plaintiffs' reputation and good will associated with their mark.

63. Defendant's above-described conduct has caused, and may continue to cause damages and irreparable injury to Plaintiffs' reputation, good will, business, and economic opportunities.

64. Plaintiffs are entitled to damages provided for by the laws of the State of Texas based on Defendant's above-described conduct.

65. Notwithstanding these damages provisions, Plaintiffs have no plain, speedy, complete or adequate remedy at law and will continue to suffer great and irreparable injury to their trademark rights and property rights for which they cannot be fully compensated in damages unless the Court enjoins Defendant from further unauthorized usage of the above described name and designation of origin.

AUSTIN 980000.30000· 312165v1

## COUNT V
## INJURY TO BUSINESS REPUTATION
## AND DILUTION UNDER TEXAS BUSINESS & COMMERCE CODE § 16.29

66.  Plaintiffs repeat and incorporate by reference the allegations and facts set forth in paragraphs 1 through 65 above as if fully set forth herein.

67.  Plaintiffs own rights in their FIELDTURF Trademark in connection with their synthetic athletic surface products, and the relevant public associates this Trademark with Plaintiffs.

68.  Defendant has made unauthorized use of the name FIELDTURF in connection with its services.

69.  Defendant's use of the name FIELDTURF is likely to injure Plaintiffs' business reputation and/or cause dilution of the distinctive quality of Plaintiffs' Trademark in that such use is a misrepresentation that Defendant's turf product is indeed a FieldTurf product when it is not.

70.  Defendant's unauthorized use of the name FIELDTURF in connection with its services has resulted in a decrease in commercial value of Plaintiffs' Trademark.

71.  Defendant's above-described conduct is a violation of Texas Business and Commerce Code § 16.29 and Plaintiffs are entitled to any and all relief thereunder, including injunctive relief preventing Defendant from causing further injury to Plaintiffs by unauthorized usage of Plaintiffs' Trademark.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, FieldTurf International, Inc. and FieldTurf, Inc., pray that this Honorable Court enter judgment in their favor and against Defendant, Hellas Construction Inc., and issue an order:

A.   That Defendant, its subsidiaries, directors, owners, partners, employees, servants and agents and all those persons in active concert and participation with Defendant, either directly or indirectly, be preliminarily and permanently enjoined from violating Plaintiffs' rights by way of:

1.   Using Plaintiffs' Trademark, or approximations, simulations or colorable imitations or confusingly similar forms thereof, in connection with selling, marketing, advertising, promoting and describing its services;

2.   Using Plaintiffs' Trademark, or approximations, simulations or colorable imitations or confusingly similar forms thereof, as a trademark, service mark, company title, trade name, corporate name, or in a source indicating sense, in connection with selling, marketing, advertising, promoting, and describing its services;

3.   Using any name, mark, designation, logo, word, trade dress, design, packaging or other material in connection with selling, marketing, advertising, promoting, and/or describing its services which is likely to cause confusion, mistake or deception with respect to Plaintiffs' names, marks, designations of origin, logos, trade dress, packaging or other material used in connection with its synthetic turf products, including Plaintiffs' Trademark;

4.   Passing off goods and/or services as those of Plaintiffs;

5.   Practicing unfair competition, unfair trade practices, and false advertising directed against Plaintiffs;

6.   Diluting and/or attempting to dilute the value of Plaintiffs' Trademark; and

13

7.  Practicing any conduct aimed at or likely to result in diverting business intended for Plaintiffs or injuring Plaintiffs' good will and business reputation by way of imitation, misrepresentation, false statements, advertising, fraud and/or deception.

B.  That Defendant be required to pay Plaintiffs such damages as Plaintiffs have sustained as a result of each of Defendant's infringement of the FIELDTURF Trademark; that such damages be trebled and that Defendant account for and pay over to Plaintiffs all gains, profits, unjust enrichment, and advantages derived by Defendant from its sale of goods and services by using the FIELDTURF Trademark in its Internet based websites, www.swtennis.com and/or www.hellasconstruction.com.

C.  That Defendant be ordered to destroy any materials whatsoever that in any way use Plaintiffs' FIELDTURF Trademark, or any confusingly similar variation thereof.

D.  That Defendant pays Plaintiffs their costs and disbursements in bringing this action, including their reasonable attorney's fees.

E.  That Plaintiffs be awarded exemplary damages that the Court shall find to be just to punish Defendant for its conduct and to deter Defendant and others from engaging in such conduct in the future.

F.  That Plaintiffs be awarded pre-judgment interest on all damages and/or profits awarded by the Court.

G.  That Plaintiffs receive such other and further relief as this Court deems just and proper.

AUSTIN: 980000.30000: 312165v1

Dated: February 11, 2005

Respectfully submitted,

*[signature: John K. Schwartz by perm]* *[signature: Barb Ellis SBN 00790641]*

John K. Schwartz
State Bar No. 17865325
Barbara Ellis
State Bar No. 00790641
LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300
Austin, TX 78701-4042
(512) 305-4700 (telephone)
(512) 305-4800 (facsimile)

ATTORNEY FOR PLAINTIFFS
FIELDTURF INTERNATIONAL, INC.
& FIELDTURF, INC

OF COUNSEL:
Jody L. Factor
Jacob D. Koering
FACTOR & LAKE. LTD.
1327 W. Washington, Blvd., Suite 5G/H
Chicago, IL 60607
(312) 226-1818 (telephone)
(312) 226-1919 (facsimile)

Int. Cl.: 27

Prior U.S. Cls.: 19, 20, 37, 42 and 50

**United States Patent and Trademark Office**

Reg. No. 2,593,572
Registered July 16, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## FIELDTURF

FIELDTURF INC. (CANADA CORPORATION)
5050 PARE STREET, SUITE 280
MONTREAL, QUEBEC, CANADA H4P 1P3

FOR: SYNTHETIC SURFACING CONSISTING OF RIBBONS OF SYNTHETIC FIBERS WOVEN ON A BACKING AND PARTIALLY COVERED BY A PARTICULATE INFILL FOR THE PLAYING OF SOCCER, AMERICAN FOOTBALL, LACROSSE, FIELD HOCKEY, GOLF AND OTHER ATHLETIC ACTIVITIES, IN CLASS 27 (U.S. CLS. 19, 20, 37, 42 AND 50).

FIRST USE 3-21-1994; IN COMMERCE 3-21-1994

SEC. 2(F)

SER. NO. 75-943,829, FILED 3-14-2000

TRICIA THOMPKINS, EXAMINING ATTORNEY

# The United States of America

## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.

The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.

A copy of the Mark and pertinent data from the application are part of this certificate.

This registration shall remain in force for TEN (10) years, unless terminated earlier as provided by law, and subject to compliance with the provisions of Section 8 of the Trademark Act of 1946, as Amended.



Director of the United States Patent and Trademark Office

Requirements for Maintaining a
Federal Trademark Registration

## SECTION 8: AFFIDAVIT OF CONTINUED USE

The registration shall remain in force for 10 years, except that the registration shall be canceled for failure to file an Affidavit of Continued Use under Section 8 of the Trademark Act, 15 U.S.C. §1058, upon the expiration of the following time periods:
   i) At the end of 6 years following the date of registration.
   ii) At the end of each successive 10-year period following the date of registration.

*Failure to file a proper Section 8 Affidavit at the appropriate time will result in the cancellation of the registration.*

## SECTION 9: APPLICATION FOR RENEWAL

The registration shall remain in force for 10 years, subject to the provisions of Section 8, except that the registration shall expire for failure to file an Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C. §1059, at the end of each successive 10-year period following the date of registration.

*Failure to file a proper Application for Renewal at the appropriate time will result in the expiration of the registration.*

**No further notice or reminder of these requirements will be sent to the Registrant by the Patent and Trademark Office. It is recommended that the Registrant contact the Patent and Trademark Office approximately one year before the expiration of the time periods shown above to determine the requirements and fees for the filings required to maintain the registration.**

Contact Us | Site Map | Home
About Hellas Construction | Projects | Products | Commitment | Sport Equipment Catalog



## a hands on approach

## BUILDING FOR SPORTS, BUILDING IT RIGHT ....
## FROM START TO FINISH

**Hellas Construction, Inc. is led by an experienced management team...**

A team that includes some of the most successful and respected professionals in sports facility construction. People with more than 20 years of experience in sports venue contracting.

People who've built many of the leading facilities in the sports industry.

And we're building on our history to become today's preeminent company for the design, consulting, engineering and construction of football fields, running tracks, tennis courts, synthetic turf and natural grass fields.

Contact us– we want to be part of your sports experience.

**As a sports facilities contractor, Hellas provides five distinct areas of service:**

1. General contractor of sports facilities.
2. Consulting services for architectural concepts, design and engineering (including construction estimates).
3. Consulting services on synthetic surface selections.
4. Construction management services.
5. Project management.

Hellas Construction is the field turf, track, tennis and specialty contractor!
Home | About Hellas | Site Map | Privacy Policy | Contact Us | ©2004 Hellas Construction

http://www.swtennis.com/                                                           2/11/2005

Contact Us | Site Map | Home
About Hellas Construction | Projects | Products | Commitment | Sport Equipment Catalog



## a hands on approach

## BUILDING FOR SPORTS, BUILDING IT RIGHT ....
## FROM START TO FINISH

**Hellas Construction, Inc. is led by an experienced management team...**

A team that includes some of the most successful and respected professionals in sports facility construction. People with more than 20 years of experience in sports venue contracting.

People who've built many of the leading facilities in the sports industry.

And we're building on our history to become today's preeminent company for the design, consulting, engineering and construction of football fields, running tracks, tennis courts, synthetic turf and natural grass fields.

Contact us– we want to be part of your sports experience.

**As a sports facilities contractor, Hellas provides five distinct areas of service:**

1. General contractor of sports facilities.
2. Consulting services for architectural concepts, design and engineering (including construction estimates).
3. Consulting services on synthetic surface selections.
4. Construction management services.
5. Project management.


Hellas Construction is the field turf, track, tennis and specialty contractor!
Home | About Hellas | Site Map | Privacy Policy | Contact Us | ©2004 Hellas Construction